IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ELIZABETH BROWN**                                                                          **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 3:19CV835 CWR-LRA**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Elizabeth Brown appeals the final decision denying her application for a period of disability and disability insurance benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

On May 31, 2017, Plaintiff filed an application for DIB alleging a disability onset date of November 30, 2016, due to bipolar disorder, borderline personality disorder, migraines and anxiety. She was 38 years old on her alleged onset date with a college education and past relevant work as an elementary school teacher. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. She now appeals that decision.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At steps two and three, the ALJ found that while Plaintiff's depression, bipolar disorder, and migraines were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work with the following nonexertional limitations:

> She has the ability to understand, remember, and carry out instructions to perform simple, routine tasks. She is limited to an isolated work setting defined as occasional interaction with supervisors and coworkers, and no interaction with the public. She needs to work with data and things, not people. The claimant cannot drive as part of the job and can have no inflexible or fast-paced production requirements.[2]

Relying on vocational expert testimony, the ALJ concluded at step five that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform work as a cleaner, laundry worker, and washer.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'" *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted). Evidence is substantial if it

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

[2] ECF No. 6, p. 25.

is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff raises two errors on appeal: (1) the ALJ's decision concerning the persuasiveness of her medical source's opinion is not supported by substantial evidence; and, (2) the Appeals Council erred in finding that newly submitted evidence did not show a reasonable probability of changing the ALJ's decision. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision. Given the evidence in this case, the undersigned submits that the Commissioner's decision should be affirmed.

### 1.

Social Security regulations divide medical experts into three general categories: (1) treating sources (primary care physicians); (2) non-treating examining sources (physicians who perform an examination of the claimant); and, (3) non-examining reviewing sources (physicians who review only the claimant's medical record). Generally, the opinions of treating physicians have historically been assigned controlling weight in determining disability, though ALJs have always been free to reject any opinion, in whole or in part, when the evidence supports a contrary conclusion.

*Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.  However, the Social Security Administration revised its regulations in 2017 so that ALJs are no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a) (2017).  Under the new regulations, supportability and consistency of medical opinions are "the most important factors" to be considered when evaluating the persuasiveness of medical opinions.  The ALJ must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in his decision. 20 C.F.R. § 404.1520c(b)(2).  However, the ALJ "*may*, but [is] not required to," explain how he considered the following factors: (1) the medical source's relationship with the claimant, including the length of the relationship and the frequency of examination, (2) the medical source's area of specialization, and (3) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c)(3)-(5).  Instead, ALJs must now "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record," considering the same enumerated factors as considered under the prior regulation, as appropriate. § 404.1520c(b).

      Applying this new standard, the ALJ in the instant case found that the medical source statement submitted by one of Plaintiff's treating sources, Dr. Jeffrey LeDuff, was

4

not sufficiently persuasive to find Plaintiff incapable of working within the limits of her residual functional capacity. The ALJ explained as follows:

> The opinion of Dr. LeDuff is not persuasive overall. He opined that the claimant's mental abilities and aptitudes needed to do unskilled work were almost entirely seriously limited or unable to meet competitive standards. He assessed the claimant as being seriously limited at understanding and remembering detailed instructions and carrying out detailed instructions, as being unable to meet competitive standards at setting realistic goals or making plans independently of others, and as having no useful ability to function regarding dealing with the stress of semiskilled and skilled work. Dr. LeDuff opined that the claimant would be seriously limited at maintaining socially appropriate behavior or adhering to basic standards of neatness and cleanliness, would be unable to meet competitive standards at interacting appropriately with the general public or traveling in unfamiliar places, and would have no useful ability to function regarding use of public transportation. He also said the claimant would miss more than four days of work per month. In this conclusory opinion, Dr. LeDuff does not correlate his opined limitations with references to the claimant's depression or bipolar disorder. His opinion is inconsistent with the record as a whole, and is even inconsistent with his own treatment records, in which he noted that the claimant was doing "much better" during most of the relevant period. However, I am incorporating Dr. LeDuff's assessment regarding the claimant's difficulties in public settings due to anxiety and being incapable of driving due to the effects of medication into the residual functional capacity. That portion of Dr. LeDuff's opinion is supported by rationale that justifies the limitation and is consistent with the claimant's testimony, statements at medical visits, and other relevant evidence.[3]

Plaintiff objects to the ALJ's conclusions and alleges that the ALJ's analysis of the supportability and consistency of Dr. LeDuff's opinion was too conclusory and warrants remand.

In assessing the evidence, the ALJ noted that Plaintiff's treating sources, including Dr. LeDuff, consistently indicated that Plaintiff's symptoms improved with medication.

---

[3] ECF No. 6, pp. 28-29.

Dr. LeDuff specifically notes in June 2016, July 2017 and January 2018 that Plaintiff does well "as long as she takes her medications," and her migraines were "fairly well controlled." Overall, she was feeling "much better." These assessments were consistent with the mental status examinations and contemporaneous observations of her primary treating source who indicated that Plaintiff was "totally stable" in February and March 2017. Despite intermittent emergency room visits and some medication side effects, Plaintiff felt her bipolar medication had been "extremely helpful." She "no longer felt manic." As noted by the ALJ, "[b]y August 23, 2018, the claimant said that her mood was improved, that she had few bad days, and that she felt the best she had in some time." Her attention span, concentration, orientation, recent/remote memory, judgment, insight, thought processes, and emotional state were "all within normal limits." And, although Plaintiff reported to Dr. LeDuff that she had begun to experience auditory and visual hallucinations at her last visit of record in November 2018, the ALJ observed that Dr. LeDuff's examination notes indicated that she had no focal neurological complaints, suicidal or homicidal ideation, depression or headache symptoms. [4]

Given the evidence as stated, it was not unreasonable for the ALJ to weigh Dr. LeDuff's examination notes and findings against his medical source statement and the record as a whole. *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018). The record before the ALJ did not establish limitations to the degree he opined. Rather, the opinions of state agency reviewing physicians indicating that Plaintiff was mildly limited in her

---

[4] ECF No. 6, pp. 27, 283-84, 384-412-18, 463-95, 546-551.

ability to understand, remember or apply information, and moderately limited in all other areas of mental functioning were more persuasive overall.[5]  Substantial evidence supports the ALJ's conclusion that Plaintiff could perform work within the limits of her residual functional capacity.

## 2.

As her second point of error, Plaintiff alleges that the Appeals Council erred in failing to remand her claim to the ALJ after she submitted new evidence for consideration.  When additional evidence is presented to and considered by the Appeals Council, the evidence becomes part of the administrative record and a reviewing court must determine whether the denial of benefits remains supported by substantial evidence. *See Schofield v. Saul*, 950 F.3d 315, 322 (5th Cir. 2020); *Whitehead*, 820 F.3d at 780; *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005).  The Appeals Council considers additional evidence only if it is new, material, and relates to the period on or before the ALJ's decision.  20 C.F.R. § 404.970(b), 404.976 (B).  "Evidence that was 'not in existence at the time of the administrative . . . proceedings meets the 'new' requirement for remand to the Secretary.'"  *Hunter v. Astrue*, 283 F. App'x 261, 262 (5th Cir. 2008).  To be material, the evidence must "relate to the time period for which benefits were denied," and it may not "concern evidence of a later-acquired disability, or of the subsequent deterioration of a previously non-disabling condition."  *Haywood v.*

---

[5] *See Webster v. Comm'r of Soc. Sec.*, No. 3:19-CV-97-DAS, 2020 WL 760395, at *5 (N.D. Miss. Feb. 14, 2020) ("[H]ere the plaintiff argues the ALJ erred when he gave more weight to the non-examining state agency physician's opinion than the opinion of a physician who actually examined him. As discussed, this is no longer a viable argument because the regulations now provide the ALJs are not to ascribe weight to any opinion at all whether it be great, some, little, or none.").

*Sullivan*, 888 F.2d 1463, 1471–72 (5th Cir. 1989) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)).  However, "even when new and material evidence submitted to an Appeals Council is 'significant' and 'casts doubt on the soundness of the ALJ's findings,' the Appeals Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016) (citing *Sun v. Colvin*, 793, F.3d 502, 511-12 (5th Cir. 2015)).  There must be a reasonable possibility that the evidence would have changed the outcome of the Commissioner's determination. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

    Four days after the ALJ issued her decision denying benefits in this case, Plaintiff submitted a medical source statement from her primary treating physician, Dr. Joseph Kwentus—a psychiatrist who treated Plaintiff from November 2016 through August 2018.  Like Dr. LeDuff, Dr. Kwentus opined that Plaintiff's mental impairments would preclude her from meeting competitive standards or having a useful ability to function in nearly all areas.  In the narrative portion of his opinion, Dr. Kwentus notes that Plaintiff reports panic attacks while driving and has problems with stress and anxiety, particularly in new situations.  He also opines that her mental impairments would cause her to miss three days of work per month.[6]

    However, a neutral review of the record supports the Appeals Council's decision that this opinion would not have changed the outcome of the proceedings.  As Plaintiff

---

[6] ECF No. 6, pp. 36-40.

acknowledges in her memorandum brief, no new treatment records accompanied Dr. Kwentus's medical source statement because there were "no new records from Dr. Kwentus to submit."[7]  Plaintiff last visited with Dr. Kwentus in August 2018, and his contemporaneous records upon which the conclusions in his medical source statement are based show that Plaintiff had continuous improvement with medication and normal examinations.  Notwithstanding her evident improvement, Plaintiff suggests that her symptoms were worsening because she told Dr. LeDuff at her last visit of record in November 2018 that she had been experiencing auditory and visual hallucinations for the last 2-3 months.  However, as noted above, this evidence was considered by the ALJ, along with the fact that Plaintiff denied depression, headaches, focal neurologic complaints, and suicidal/homicidal ideation during the examination.  The undersigned would further note that Dr. LeDuff adjusted Plaintiff's medications after she reported hallucinations, and she did not testify to any hallucinations at her hearing in December 2018, nor has she submitted any additional evidence establishing a worsening of her symptoms.[8]

Substantial evidence supports the Appeals Council's decision that Dr. Kwentus's opinion was not so significant as to require remand to the ALJ.   Dr. Kwentus's newly submitted statement is cumulative of Dr. LeDuff's opinion.  Both physicians submitted the same form medical source statements assigning limitations beyond those indicated in

---

[7] ECF No. 11, p. 7.

[8] ECF No. 6, p. 558.

9

their clinical finings.  As with Dr. LeDuff, the ALJ's residual functional capacity assessment also reasonably incorporates the portions of Dr. Kwentus's medical source statement that were consistent with and supported by the record.  Dr. Kwentus opines, for instance, that Plaintiff has trouble with stress and severe anxiety in new situations, but she can satisfactorily understand and remember very short and simple instructions.  In this regard, the ALJ's residual functional capacity assessment limits Plaintiff to performing simple, routine tasks, working with "data and things, not people," and "no inflexible or fast-paced production requirements."  Dr. Kwentus also opines that Plaintiff would be unable to get along with coworkers without unduly distracting them or exhibiting behavioral extremes.  The ALJ's residual functional capacity limits Plaintiff to an "isolated work setting defined as occasional interaction with supervisors and coworkers, and no interaction with the public."  Lastly, Dr. Kwentus notes that Plaintiff reported that she has panic attacks while driving.  The ALJ's residual functional capacity assessment expressly provides that Plaintiff "cannot drive as part of the job."[9]

The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ, and the ALJ properly credited the limitations she found most consistent with and supported by the record.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hernandez v. Astrue*, 278 F. App'x 333, 337 (5th Cir. 2008).  Plaintiff has not shown a reasonable possibility that the new evidence would change that result.

---

[9] ECF No. 6, pp. 29, 36-40.

## Conclusion

In sum, based upon consideration of the evidentiary record, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a recommendation that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on December 29, 2020.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE